**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JONATHAN HARRISON | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 3:17-1333 |
| v. | : | |
| | | (JUDGE MANNION) |
| UNITED STATES, | : | |
| Defendant | : | |

## MEMORANDUM

**I.　Background**

Plaintiff, Jonathan Harrison, an inmate currently confined in the Federal Correctional Institution, Fort Dix, New Jersey, filed the above captioned action pursuant to the Federal Tort Claims Act ("FTCA"). (Doc. 4, complaint). Plaintiff alleges that "as a result of the fault of Defendants, by and through their agents, servants and employees, acting within the scope of their employment plaintiff suffered vision lost in [his] left eye due to their deliberate neglect." Id. Specifically, Plaintiff states that on June 25, 2010, he "was examined by defendant doctors at the FCC-Allenwood Correctional Institution, at which time, the Plaintiff was there for a chronic care visit." Id. He claims that "at that time defendant, Jay Miller, diagnosed that plaintiff had an enlarged optical nerve", however, there was "never a report generated that mention[ed] plaintiff needing a retina examination." Id.

In 2014, "Plaintiff was examined by the optometrist at FCI-Estill, SC, and

this was not until Plaintiff suffered vision lost (sic)." Id. Plaintiff claims that he was "denied the request to see the retinal specialist made at the prior institution by the medical administrator and her assistant." Id.

Plaintiff filed the instant action alleging that Defendant was "negligent in failing to properly provide Plaintiff with the adequate care needed" and "failing to diagnose the condition and further negligent in failing to utilize the reports diagnosing the problem that were available." Id. Plaintiff believes that "the swelling in [his] optical nerve could have been removed in a minor surgical procedure and Plaintiff's vision could have been saved." Id. For relief, Plaintiff seeks five million dollars in damages. Id.

Presently before the Court is Defendant's motion for summary judgment. (Doc. 17). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment will be granted.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of

materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

### III. Statement of Undisputed Facts

From April 22, 2010 until March 25, 2013, Harrison resided at FCC-Allenwood. (Doc. 19-2 at 8, Inmate History). Harrison then transferred to FCI-

Estill and remained incarcerated in South Carolina from April 9, 2013 until October 18, 2016. Id. Harrison is currently housed at the Federal Correctional Institution located at the Joint Military Base in Fort Dix, New Jersey (FCI-Fort Dix). Id.

An October 2, 2017 review of the BOP Content Manager Administrative Tort application reveals that Plaintiff filed two (2) administrative tort claims while incarcerated in the Federal Bureau of Prisons. (Doc. 19-2 at 3, Declaration of Jonathan Kerr, Senior Consolidated Legal Center Paralegal at the Federal Correctional Complex, Allenwood, Pennsylvania). Only one of the two administrative tort claims address Plaintiff's delay or denial of a retina examination while at FCC-Allenwood. Id.

On July 6, 2016, Plaintiff filed Administrative Tort Claim Number TRT-SER-2016-05204 with the BOP Southeast Regional Office. (Doc. 19-2 at 10, Claim for Damage, Injury or Death). Plaintiff's statement of claim reads as follows:

> On 6/10/15, my vision began to decrease. I went to the infirmary to obtain treatment. I was given eye drops that completely cause my vision to go. Dr. McKenzie told me that the drops he gave me sometimes stop working. I requested to see an eye doctor. I was schedule to see Dr. McKenzie my appointment was postponed this was did done in May. I have lost my vision and I request that someone trained in this field to help me. I have suffered daily and my everyday living is difficult with my vision lost. I have been denied access to medical personnel qualified to exercise

5

> judgment about my eye problem. There has been a failure to diagnose what has cause my vision to go. I request that I receive correct treatment.

Id. For relief, Plaintiff seeks five (5) million dollars. Id.

On January 3, 2017, the Southeast Regional office denied the claim, finding the following:

> Your claim has been considered for administrative settlement under the Federal Tort Claims Act (FTCA), Title 28 United States Code (U.S.C.) §2672 et seq., and authority granted by Title 28 Code of Federal Regulations (C.F.R.) §0.172. Section 2672 of the FTCA delegates to each federal agency the authority to consider, determine and settle any claim for money damages against the United States for loss of personal properly or injury caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment.
>
> You claim you have suffered eye issues from June 10, 2015, to the present and have not received effective treatment or medical solution for your diagnosis of glaucoma. You assert that during your previous incarceration at the Federal Correctional Institution (FCI) Estill, South Carolina, an Optometrist prescribed eye drops that allegedly caused you to lose vision in your left eye. You allege an Optometrist told you the eye drops may stop working. You state you requested to see an eye doctor. You allege your appointments were postponed. You now state you have lost vision in your left eye and continue to request that a physician with vision loss experience treat you. You further state that FCI Estill ended your treatment with the outside ophthalmologist and you have received no professional care or treatment to alleviate the problem. You claim that the delays in providing you with conclusive care are a gross act of neglect and indifference on Bureau of Prison's (BOP) part. You assert that you have experienced unnecessary, constant, and unmitigated pain and suffering as a direct result of the lack of decisive care for your eye

disorder. Consequently, you seek $5,000,000 for personal injury.

At the outset, I must advise you that any claims that FCI Estill staff violated your constitutional rights are not compensable pursuant to the FTCA. Title 28 U.S.C. §2680 states the FTCA has waived the sovereign immunity of the United States only to the extent that a private person would be liable under the law of the place where the act or omission occurred. Constitutional violations do not fit within this waiver and are therefore not addressed.

We have reviewed your claim along with your medical file, reports from appropriate staff members, and relevant policies. You arrived at FCI Estill on April 9, 2013, with a history of glaucoma and other chronic medical conditions. On June 10, 2015, you were seen by an optometrist for visual field loss. You were diagnosed as having stable intraocular pressure in both eyes. The treatment plan was to continue current eye drops for your glaucoma which were latanoprost and travoprost. These medications were prescribed prior to arriving at FCI Estill. The optometrist submitted a referral for you to see an ophthalmologist for a surgical consult. On June 23, 2015, your prescription changed by continuing the latanoprost eye drops and discontinuing the use of travoprost eye drops due to formulary restriction.

On a follow-up appointment on September 21, 2015, you had no medical complaint and you were instructed to continue the latanoprost eye drops. On October 1, 2015, you were assessed with open angle glaucoma and cataracts in both eyes. Renewed prescription for latanoprost eye drops was ordered. It was noted your glaucoma remained stable. Records indicate your treatment goals continue to have been met.

On December 23, 2015, you were seen by the Ophthalmologist. You were assessed as having primary open angle glaucoma (POAG) with a possible iriodialysis component osculus sinister (OS). An examination showed you have lost useful vision OS from undetected glaucoma. Your intraocular pressure (IOP) remained elevated at 26 in both eyes despite treatment with Travatan eye

drop. The Ophthalmologist was concerned about your compliance with the prescribed eye drops. He noted your IOP was controlled as recent as June 2015, with an IOP of 13. The Ophthalmologist recommended new treatment in order to lower your IOP and change eye drops to lumigan. Also, the Ophthalmologist determined you had a possible macular hole, stage 1 OS which such macular changes may be causing some of your significant vision issues. Your eye glass prescription was stable and new glasses were not medically indicated. Medical staff at the institution concurred with the Ophthalmologist. Medical staff reviewed your medical records which revealed you were non-compliant with your eye drops the past 3 months and did not pick up any of your refills. The Ophthalmologist advised that failure to use these eye drops could lead to further vision loss.

On January 6, 2016, during an optometry follow-up appointment it was recommended you continue latanaprost eye drops. You also stated during the appointment you sustained a left eye injury from being poked while playing basketball.

On February 10, 2016, during a follow-up appointment with the Optometrist, he considered referring you to a glaucoma optometrist if no improvement was found. Also, he prescribed you new eye drops.

On March 24, 2016, during an exam at Health Services for muscle/joint aches, it was noted you were negative for blurred or double vision.

On April 6, 2016, during an optometry follow-up you expressed your left eye hurt. It was recommended to continue all prescribed eye drops.

On April 14, 2016, during an optometry follow-up it was recommended you continue all prescribed eye drops and follow-up with optometry in May 2016 and ophthalmology in June 2016.

On July 15, 2016, during an ophthalmology follow-up you were seen for eye pain. This was consistent with eye drops that could cause occasional burning. Your IOP remained stable at 14 & 16. The Ophthalmologist recommended you to continue all three prescribed eye drops. An examination revealed your eye glasses prescription was stable and no new glasses were ordered at that time. Your glaucoma was stable and no progression of disease was detected. You were referred to a retina ophthalmologist. The Ophthalmologist evaluation also showed you the importance of compliance with the eye drops in order to prevent further loss of vision. Based on the improvement to your IOP, the Ophthalmologist indicated that you could follow up with an optometrist.

Since entering FCI Estill and reporting your eye issues on June 15, 2015, you have received prescription renewals of latanoprost eye drops, Travatan eye drops, lumigan eye drops, Timolol Maleate eye drops, and brimonidine eye drops. You have been evaluated by optometrists on five (5) occasions and examined by ophthalmologists on two (2) occasions during this time frame. Surgery was not recommended for your glaucoma at any of your ophthalmology appointments. You have not reported to the Health Services Unit (HSU) Department for any vision problems since your last ophthalmology appointment on July 15, 2016.

There is no evidence that you have been denied effective treatment of your glaucoma. Your glaucoma has been regularly monitored by medical staff and you have received a conservative course of treatment, including prescription eye drops. Additionally, your claim that medical staff at FCI Estill ended your access to outside consultant ophthalmologists is unfounded. You have been evaluated for your glaucoma by FCI Estill medical staff, as well as outside optometrists and ophthalmologists, on numerous occasions, mostly recently on July 15, 2016. Thus, you received consistent, proper medical care for your glaucoma.

There is also no evidence of any gross negligence or indifference by BOP staff that caused you to experience unnecessary,

constant, and unmitigated pain and suffering due to lack of treatment. You indicated that you experienced slight redness or burning when using the eye drops on a couple occasions but you never reported any "unnecessary, constant, and unmitigated pain and suffering." The possible side effects of your prescription eye drops were discussed with you, including a temporary burning sensation, as well as the benefits of the use of the medication to prevent blindness. You also never requested any assistance from Psychology Services for pain and suffering. Additionally, you are able to perform your life activities without any difficulties or special accommodations. Thus, your claims have no merit.

Based upon the above, there is no evidence to support your claim that you have suffered any injury or loss caused by the negligence or wrongful act or omission of a BOP employee acting within the scope of their employment. You have been provided treatment consistent with evidence based, proven effective medical treatment in accordance with approved policies. Thus, your claim is denied.

You are advised that if you are dissatisfied with our determination in these matters, you are afforded six (6) months from the date of the mailing of this communication within which to bring suit in the appropriate United States District Court.

(Doc. 19-2 at 13, Response to Administrative Tort Claim #TRT-SER-2016-05204).

## IV. Discussion

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent

part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of the agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section....

The plaintiff has the burden of demonstrating that the agency actually received the administrative claim. Lightfoot v. United States, 564 F.3d 625 (3d Cir. 2009). This burden rests with the plaintiff because, in general, the United States enjoys sovereign immunity from suit unless it otherwise consents to be sued. White–Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). The United States' "consent to be sued must be 'unequivocally expressed,' and the terms of such consent define the court's subject matter jurisdiction." Id. The Federal Tort Claims Act constitutes "a limited waiver of the United States's sovereign immunity." Id. The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. §1346(b)(1); see also 28 U.S.C.

§2674.

Prior to commencing an FTCA action against the United States in federal court, however, a plaintiff must "first present[ ] the claim to the appropriate Federal agency" and receive a final denial "by the agency in writing and sent by certified or registered mail." 28 U.S.C. §2675(a). A claim is considered to be presented when the federal agency receives written notification of the alleged tortious incident and the alleged injuries, together with a claim for money damages in a sum certain. 28 C.F.R. §14.2(a). If the receiving federal agency fails to make a final disposition of the claim within six months from the time it is filed, that failure is "deemed a final denial of the claim" for purposes of commencing suit under the FTCA. 28 U.S.C. §2675(a).

The Third Circuit has instructed that "[i]n light of the clear, mandatory language of the statute, and [the] strict construction of the limited waiver of sovereign immunity by the United States, ... the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (citing Livera v. First Nat'l Bank of New Jersey, 879 F.2d 1186, 1194 (3d Cir. 1989)). The Supreme Court has likewise succinctly explained that "[t]he FTCA bars claimants from bringing suit in federal court

until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993). As a result, a district court may dismiss a claim brought under the FTCA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the plaintiff has not exhausted his administrative remedies prior to filing suit. See, e.g., Abulkhair v. Bush, 413 F. App'x 502, 506 (3d Cir. 2011); Accolla v. United States Gov't, 369 F. App'x 408, 409–10 (3d Cir. 2010) (finding the district court properly dismissed FTCA claim where the plaintiff filed federal suit prior to exhausting administrative remedies).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. §2401(b) or its tort claim under the FTCA will be "forever barred."[1] See Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971). In order to sue the United States in District Court and avoid violating the FTCA's express statute of limitations, a tort claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b); see also Bialowas, 443 F.2d at 1049. Section 2401's "time

---

[1] 28 U.S.C. §2401(b) states:
[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

13

bar is strictly construed." Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1195 (3d Cir. 1989). The claim accrues "when a plaintiff knows of both the existence and the cause of his injury." Miller v. Phila. Geriatric Center, 463 F.3d 266, 272 (3d Cir. 2006). The claim is "presented" (thus tolling the running of the limitations period) when an executed SF-95 and a claim for money damages in a sum certain are received by the government agency. 28 C.F.R. §14.2.

As is apparent from the record evidence, Plaintiff's July 6, 2016 tort claim pertains only to the care he received for his eye issues in 2015, while housed at FCI-Estill. Plaintiff makes no reference to any eye treatment or care received while he was housed at FCC-Allenwood from April 22, 2010 until March 25, 2013. Thus, it is clear from the record that Plaintiff failed to, prior to filing the above captioned action, submit an administrative tort claim to the BOP for consideration of any treatment or care received regarding his glaucoma or eyes while at FCC-Allenwood.

Because Harrison had to file his administrative tort claim with the Bureau of Prisons and receive a final denial of his claims pursuant to 28 U.S.C. §2675(a) prior to filing his lawsuit, and he failed to do so, this Court lacks jurisdiction over the claims. McNeil v. United States, 508 U.S. 106,

111-112 (1993) (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); Accolla v. United States, 369 F. App'x 408, 409-10 (3d Cir. 2010) (holding "because Accolla filed his FTCA action in federal court before [the agency's ruling on his administrative tort claim] and before the expiration of the appropriate six month period, the District Court was without jurisdiction to rule on the FTCA claim."); Roma v. United States, 344 F.3d 352, 363 (3d Cir. 2003) (noting "the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived.").

Moreover, any claim regarding events that occurred at FCC-Allenwood are now time-barred because they occurred prior to the 2-year statute of limitations window. Plaintiff, himself, admits that his vision was lost prior to being examined by an optometrist at FCI- Estill in 2014. As result, according to his own allegations, Harrison's claims accrued at the absolute latest in 2014 when Harrison admittedly knew both the existence (loss of vision) and cause (BOP care at FCC-Allenwood) of his injury. To date, however, Harrison has not submitted an administrative tort remedy relating to the BOP's alleged medical malpractice at FCC-Allenwood. Consequently, Plaintiff's instant action

15

was filed outside of the two-year statute of limitations. See 28 U.S.C. §2401(b). Accordingly, Defendant's motion for summary judgment will be granted.

Finally, with respect to Plaintiff's 2015 claims that are potentially timely and exhausted, such claims occurred at FCI-Estill in South Carolina. Venue in a FTCA suit against the United States may be brought "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." See 28 U.S.C. §1402(b). When venue is improper, as in this case, a court may transfer the case to the district court "in which it could have been brought." 28 U.S.C. Section 1406(a). In the interest of justice, therefore, the Court finds that Plaintiff's remaining 2015 FTCA claim should be transferred to the United States District Court for the District of South Carolina.

## V. Conclusion

Defendant is entitled to summary judgment based on Plaintiff's failure to exhaust his FTCA administrative remedies with respect to all claims prior to 2015 and because Plaintiff's pre-2015 claims are statutorily time barred. Plaintiff's remaining 2015 FTCA claim will be transferred to the United States

District Court for the District of South Carolina. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 29, 2019**
17-1333-01